UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **BRENDA LARKIN,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**GLAXOSMITHKLINE, LLC, a Foreign Limited Liability Company,**<br><br>　　　　**Defendant.** | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Brenda Larkin ("Larkin" or "Plaintiff") by and through undersigned counsel, brings this Complaint against the Defendant, GlaxoSmithKline, LLC, a Limited Liability Company ("Defendant"), and states as follows:

### GENERAL JURISDICTION

1. Plaintiff Larkin is an individual over the age of 18 years old and is thus *sui juris*.

2. Larkin currently resides in Hillsborough County, Florida, and did at all times relevant to the allegations herein reside in Hillsborough County, Florida.

3. Defendant GlaxoSmithKline, LLC is a foreign limited liability company authorized to do business in Florida, but with a principal place of business at 1000 GSK Drive, Moon Township, Pennsylvania 15108.

### DIVERSITY JURISDICTION

4. There is complete diversity of the Parties as Larkin resides in Florida and Defendant has a principal place of business in Pennsylvania.

5. This is an action for damages which exceed $75,000.00 exclusive of attorneys' fees, costs, and interest.

6. Thus, the Court has diversity jurisdiction over the claims raised herein pursuant to 28 U.S.C. § 1332.

## VENUE

7. Venue is proper in the United States District Court in and for the Middle District of Florida pursuant to 28 U.S.C. § 1391 as the events giving rise to the claims asserted herein occurred in this District.

8. The Tampa Division is the proper division of the District Court pursuant to Middle District of Florida Local Rule 1.02(b)(4) as the events giving rise to the claims asserted herein occurred in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

9. The Defendant employed 15 or more individuals for each of the 20 weeks preceding the events described herein.

10. Therefore, the Defendant is an "employer" within the meaning of the Florida Civil Rights Act of 1992 ("FCRA").

11. Larkin was an "employee" of the Defendant within the meaning of the FCRA.

12. Larkin was employed by Defendant and/or its subsidiary GlaxoSmithKline Pharmaceuticals, Ltd. from approximately March 2000 to May 24, 2016.

13. During that time, Larkin performed well in Defendant's organization as a Sales Representative.

14. Larkin experienced an on-going pattern of sex-based discrimination from her supervisor, Jack Jones ("Jones").

15. Over the course of several years, Jones passed Larkin over for assignments and activities that would have created the opportunity for her to advance with the Defendant both in status and pay.

16. Jones's conduct ultimately caused the work environment to become so intolerable for so long that Larkin believed she had no choice but to resign.

17. Prior to her constructive discharge on or about May 24, 2016, the Defendant engaged in a pattern of sexually discriminatory behavior that stretched back for years.

18. All of the actions were the result of supervisor Jones's discriminatory attitude towards women.

19. There are many examples over the years of Jones's sex-based discrimination/harassment of females under his supervision, including Lark.

20. In the months preceding the discharge, Larkin was denied a lateral transfer in favor of a man, even though the transfer would have been more conducive to her professional and financial growth with the Defendant and more convenient to her living situation.

21. Jones singled Larkin out during staff meetings for trivial reasons in order to make her feel inferior to her male colleagues.

22. Jones criticized Larkin in a group meeting for doing "in-service" sessions with a particular medical group, while also directing a male co-worker to do the same "in-services" sessions.

23. Even though Larkin and another female expressed interest in taking on additional duties that became available due to another employee's departure from the team, Jones gave the duties to a male co-worker.

24. The additional duties that Larkin told Jones she was interested in taking on, and was subsequently denied the ability to do, would have been the kind of duties that opened doors to advancement within the Defendant.

25. Jones ordered Larkin to meet with him at a Starbucks ostensibly for the purpose of discussing work.

26. Instead, Jones asked Larkin about her personal life, including whether she was having problems at home and whether she suffered from low self-esteem.

27. Larkin found Jones's conduct inappropriate, unwarranted, chauvinistic, and more favorable toward males.

28. Accordingly, the Defendant is liable for the hostile work environment created by Jones, as well as the tangible employment action of constructive discharge, as Jones conditioned Larkin's continued employment upon her tolerance of his sexually discriminatory behavior.

29. As a result of Defendant's unlawful conduct, described *infra*, Larkin has had to retain counsel to represent her rights, and, as such, is obligated to pay attorneys' fees and costs to the undersigned for legal services.

30. Larkin has completed all conditions precedent and/or administrative prerequisites for the claims herein, to the extent there are any such requirements.

## COUNT I (FCRA HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT)

31. Larkin reaffirms and realleges paragraphs 1-30, above.

32. Larkin is in protected class within the meaning of the FCRA by virtue of her sex, female.

33. Larkin was qualified to perform her job duties with the Defendant.

34. The Defendant, via its employee, Jones, engaged in ongoing sex-based discriminatory behavior that was unwelcome and severe or pervasive.

35. The discriminatory conduct permeated the workplace such that it materially altered the terms and conditions of Larkin's employment with the Defendant.

36. The Defendant is liable because it permitted Larkin's supervisor to engage in the discriminatory/harassing conduct unchecked.

37. Jones's decisions were either made solely by virtue of his status with the Defendant, or were rubber-stamped by the Defendant without adequate review of his recommendations.

38. As a direct and proximate result of Defendant's actions, Larkin has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

39. By virtue of the actions described herein, the Defendant has violated the FCRA.

40. As a large company with a human resources department, who has nonetheless been sued multiple times by other individuals alleging discrimination-based claims, the Defendant is keenly aware of the laws.

41. Thus, its actions in permitting the on-going harassment of Larkin were reckless, willful, and/or malicious.

42. Larkin's losses are permanent and continuing and Larkin will continue to suffer losses in the indefinite future.

WHEREFORE, Larkin demands that the Court enter judgment against Defendant GlaxoSmithKline, LLC, and:

a. Direct the Defendant to make Larkin whole by providing her with back pay;

b. Direct the Defendant to reinstate Larkin, or, if that is not feasible, award her front pay;

c. Direct the Defendant to make Larkin whole by providing her with compensation for mental anguish, emotional damages, loss of the capacity of enjoyment of life, and humiliation;

d. Direct the Defendant to pay reasonable attorneys' fees and costs associated with prosecution of this lawsuit;

e. Award nominal damages;

f. Award punitive damages;

g. Grant whatever additional damages or equitable relief the Court deems just and proper; and

h. Interest on any amount awarded.

## COUNT II (FCRA TANGIBLE EMPLOYMENT ACTION SEXUAL HARASSMENT)

43. Larkin reaffirms and realleges paragraphs 1-30 and 32-33, above.

44. Jones had supervisory authority over Larkin.

45. Jones conditioned Larkin's employment on her acquiescence to his sex-based discrimination.

46. Jones's sex-based discriminatory conduct, including denial of opportunities for growth and financial earnings, as well as his unwelcome commentary about Larkin in both a one-on-one basis and in the company of co-workers, created an intolerable environment.

47. Larkin felt that she had no choice but to resign, as Jones's conduct did not improve and she reasonably believed that he would continue to cause her personal, professional, and financial losses due to his discriminatory attitude and actions.

48. Thus, Larkin was constructively discharged on or about May 24, 2016.

49. As a direct and proximate result of Defendant's actions, Larkin has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

50. By virtue of the actions described herein, the Defendant has violated the FCRA.

51. As a large company with a human resources department, who has nonetheless been sued multiple times by other individuals alleging discrimination-based claims, the Defendant is keenly aware of the laws.

52. Thus, its actions in permitting the on-going harassment of Larkin were reckless, willful, and/or malicious.

53. Larkin's losses are permanent and continuing and Larkin will continue to suffer losses in the indefinite future.

WHEREFORE, Larkin demands that the Court enter judgment against Defendant GlaxoSmithKline, LLC, and:

a. Direct the Defendant to make Larkin whole by providing her with back pay;

b. Direct the Defendant to reinstate Larkin, or, if that is not feasible, award her front pay;

c. Direct the Defendant to make Larkin whole by providing her with compensation for mental anguish, emotional damages, loss of the capacity of enjoyment of life, and humiliation;

d. Direct the Defendant to pay reasonable attorneys' fees and costs associated with prosecution of this lawsuit;

e. Award nominal damages;

f. Award punitive damages;

g. Grant whatever additional damages or equitable relief the Court deems just and proper; and

h. Interest on any amount awarded.

**COUNT III (FLORIDA WHISTLE-BLOWER'S ACT RETALIATION)**

54. Larkin reaffirms and realleges paragraphs 1-8, 12-30, and 32-33, above.

55. The Defendant employs and did employ 10 or more persons at all relevant times.

56. Therefore, the Defendant is an "employer" within the meaning of the Florida Whistle-Blower's Act ("the Act").

57. Larkin was an "employee" of the Defendant within the meaning of the Act.

58. Larkin objected to the Defendant's unlawful discrimination on the basis of sex, and therefore became a protected individual within the meaning of section 448.102(3), *Florida Statutes*.

59. The Defendant engaged in on-going retaliation to Larkin's objections to discrimination, beginning with her objection to a discriminatory refusal to transfer her to a more favorable territory, to her reprimand for that objection, to her being singled-out and humiliated by Jones, and ultimately, to her constructive discharge.

60. The on-going acts of retaliation between Larkin's objection to sex discrimination beginning in early 2014 to her constructive discharge in May 2016 create a causal connection between the events.

61. Most recently, Larkin's objection to the February 2016 discriminatory conduct by Jones as to the "in-service" sessions is causally connected to his on-going, unwarranted criticism of Larkin, which led to her constructive discharge in May 2016.

62. As a direct and proximate result of Defendant's actions, Larkin has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

63. By virtue of the actions described herein, the Defendant has violated the Act.

64. Larkin's losses are permanent and continuing and Larkin will continue to suffer losses in the indefinite future.

WHEREFORE, Larkin demands that the Court enter judgment against Defendant GlaxoSmithKline, LLC, and:

    a. Direct the Defendant to make Larkin whole by providing her with back pay;

    b. Direct the Defendant to reinstate Larkin, or, if that is not feasible, award her front pay;

    c. Direct the Defendant to make Larkin whole by providing her with compensation for mental anguish, emotional damages, loss of the capacity of enjoyment of life, and humiliation;

    d. Direct the Defendant to pay reasonable attorneys' fees and costs associated with prosecution of this lawsuit;

    e. Award nominal damages;

    f. Grant whatever additional damages or equitable relief the Court deems just and proper; and

    g. Interest on any amount awarded.

## JURY TRIAL DEMAND

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 24th day of April, 2020.

/s/ Shaina Thorpe
SHAINA THORPE
Florida Bar No. 0055464
Primary:  shaina@thorpelaw.net
Secondary: angel@thorpelaw.net

**THORPELAW, P.A.**
1228 East 7th Avenue, Suite 200
Tampa, Florida 33605
Telephone: (813) 400-0229
Fax: (813) 944-5223

*Counsel for Plaintiff Brenda Larkin*
